FREDERIC C. PITCHER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GEORGE H. ENGLEHARD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CARL S. STERN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WALTER H. POLLAK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

RUTH I. WILSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 56701–56703, 56737, 59844–59848, 70931, 70932.

Promulgated December 28, 1934.

*George H. Englehard, Esq.*, for the petitioners.
*Frank M. Thompson, Jr., Esq.*, for the respondent.

OPINION.

SEAWELL: These proceedings were consolidated for hearing and report and involve the redetermination of deficiencies in income tax as follows:

| Petitioner | Docket No. | Year | Amount |
|---|---|---|---|
| Frederic C. Pitcher | 56701 | 1928 | $455. 20 |
| Do | 59846 | 1929 | 98. 25 |
| George H. Englehard | 56702 | 1928 | 353. 81 |
| Do | 59848 | 1929 | 66. 06 |
| Do | 70931 | 1930 | 128. 93 |
| Carl S. Stern | 56703 | 1928 | 392. 28 |
| Do | 59847 | 1929 | 85. 54 |
| Walter H. Pollak | 56737 | 1928 | 231. 62 |
| Do | 59845 | 1929 | 100. 96 |
| Do | 70932 | 1930 | 156. 69 |
| Ruth I. Wilson | 59844 | 1929 | 29. 53 |

The common issue is whether the sum of $7,500 received each taxable year by the partnership of Englehard, Pollak, Pitcher & Stern, of which the petitioners were members, as compensation for services rendered as counsel for the Board of Housing of the State of New York, is exempt from tax. The petitioners contend that the compensation is exempt from taxation because received as employees of an essential instrumentality of the government of the State of New York. The position of the respondent is that the functions of the Board of Housing were not strictly governmental, and that the petitioners were independent contractors. The facts were stipulated.

The New York Board of Housing was created in 1926 " for the purpose of aiding in the correction of certain congested and unsanitary housing conditions which the legislature of the State of New York found to exist in certain areas of the State of New York, in low priced dwellings, and which, in the opinion of the legislature, constituted a menace to the health, safety, morals, welfare and reasonable comfort of the citizens of the state." Section 2 of the act reads as follows:

*Legislative finding.* It is hereby declared that congested and unsanitary housing conditions which exist in certain areas of the state in low priced dwellings are a menace to the health, safety, morals, welfare and reasonable comfort of the citizens of the state. The correction of these conditions in such areas being now otherwise impossible, it is essential that provision be made for the investment of private funds at low interest rates, the acquisition at fair prices of adequate parcels of land, the gradual demolition of existing unsanitary and unsafe housing and the construction of new housing facilities under public supervision in accord with proper standards of sanitation and safety and at a cost which will permit monthly rentals which wage earners can afford to pay and not in excess of the rates hereinafter provided. Therefore, there are created and authorized the agencies and instrumentalities hereinafter pre-

scribed, which are declared to be the agencies and instrumentalities of the state for the purpose of attaining the ends herein recited, and their necessity in the public interest is hereby declared as a matter of legislative determination.

The act provides the manner by which public limited dividend housing corporations may be formed and for the supervision of any corporations organized under the act, the amount of capital to be paid in, the rate of interest or dividends to be paid on the stock, bonds, or mortgages issued by the corporations, and the amount to be received by the stockholders on dissolution. It provides further that any surplus in excess of the par value of the stock, plus unpaid accumulated dividends, be paid into the general fund of the state, and grants to the corporations power of eminent domain on projects for the construction of housing accommodations approved by the Board of Housing.

Article 3 of the act exempts corporations formed under its provisions from the payment of franchise, organization, income, mortgage recording, and other taxes to the state, and all fees to the state and its officers. It also declares bonds, mortgages, and income debenture certificates of the corporations to be instrumentalities of the state issued for public purposes, and exempts such securities and interest thereon from taxation.

The Board of Housing consists of five members appointed by the governor with the advice and consent of the senate. They serve without pay, but are allowed all necessary expenses incurred in the exercise of their duties. The state architect is an *ex officio* member of the board. One member of the board is required to serve on the board of directors of every corporation formed under the provisions of the act. Other duties of the board, as prescribed by the act, are:

* * * to study housing needs and conditions throughout the state; to determine in what areas there exist congested and unsanitary conditions, and to prepare plans for correcting such conditions; to collect and distribute information relating to housing, and study means of lowering rents on dwellings by securing economy in the construction and arrangement of buildings; to assist in the preparation of legislation and regulations in relation to housing throughout the state; to cooperate with local housing boards or similar bodies in cities and other localities; to investigate monopolies of building materials and cooperate with federal and state prosecuting officers to end such monopolies; to encourage cooperative housing and tenant-ownership of dwellings; to report from time to time to the Superintendent of Public Works with respect to matters within its jurisdiction; and to investigate into the affairs of limited dividend housing companies, incorporated under said acts, and into the dealings, transactions, or relationship of such companies with third persons.

The respondent questions the governmental character of the Board of Housing only on the ground that a member of the board is required to be on the board of directors of every corporation formed

under the provisions of the act and that the state is entitled to receive certain surplus of the corporations. Under the view we take upon another phase of the case, it is not necessary for us to decide whether the Board of Housing is engaged in an essential governmental function; and this question is remitted to some future case which may require its decision.

The act empowers the Board of Housing to appoint such " * * * officers and employees as the board may require for the performance of its duties and shall fix and determine their qualifications, duties and salaries."

On August 24, 1926, the Board of Housing confirmed the engagement of the partnership of Englehard, Pollak, Pitcher & Stern as its counsel, subject to the terms of the partnership's letter of acceptance, reading as follows:

We accept with great pleasure the retainer as counsel for the State Board of Housing, the compensation to be $7500. a year. It is understood, however, that this compensation will not include services in conducting litigations, and further that if the work required of counsel is disproportionately greater or less than now contemplated, the amount will be subject to readjustment within the year.

We deem it unnecessary to set forth or discuss the numerous Board and court cases cited by counsel relating to the question of whether or not the petitioners were employees of the State of New York and, as such, exempt from tax on the compensation the partnership received for its services. No general rule has ever been laid down as a guide for determining such questions. The decision must turn on the peculiar facts present. *Register* v. *Commissioner*, 69 Fed. (2d) 607; *Kreipke* v. *Commissioner*, 32 Fed. (2d) 594, affirming 7 B. T. A. 777; *Burnet* v. *Livezey*, 48 Fed. (2d) 159; *Harry D. Kremer*, 31 B. T. A. 566.

The partnership rendered such services as were assigned to it by the Board of Housing. The services performed consisted of " attendance at board hearings, drafting legislation, rendering opinions upon questions referred to them by the board; examining projects of limited dividend housing companies incorporated under the State Housing Laws that are submitted to them by the board and investigating questions arising out of the operation of such projects." The compensation of $7,500 received each year for these services was paid directly to the partnership by the superintendent of public works.

The partnership was not employed for a particular case, as in *Lucas* v. *Reed*, 281 U. S. 699, but for the performance of general law work, other than litigation, for an indefinite period. Such facts were present in *Burnet* v. *Livezey*, *supra*, and *United States* v. *Butler*, 49 Fed. (2d) 52, cases in which the compensation was held to be exempt

from tax. The firm was at the beck and call of the board in connection with any legal matters which might arise in the exercise by the board of any of its functions. To the extent that the work of the partnership was advisory only and it could not affirmatively act on conclusions reached by it without approval of the board, the board exercised control over the work of the partnership. Such facts have frequently been referred to as indicating the relationship of employer and employee. Other considerations, however, lead us to the conclusion that the partnership was an independent contractor. The firm did not agree to do all of the law work of the Board of Housing, exclusive of litigation, for the stipulated retainer of $7,500 per year. If the volume was more or less than the amount contemplated at the time the firm's services were engaged, the fee was to be adjusted proportionately. In *Burnet* v. *Livezey, supra*, and *United States* v. *Butler, supra*, it was shown that the employer had first call on the services of the taxpayers. As to that point, the stipulation here is silent. If we were to hazard a guess, it would be that the firm would not have agreed to give all of the time of all of its members without a definite understanding on the question of compensation therefor. All of the work performed for the Board of Housing was done by petitioner Stern with the aid of employees of the partnership. Of course, the partnership had absolute control over its employees and was free to direct their activities in detail. Cf. *Underwood* v. *Commissioner*, 56 Fed. (2d) 67. Nothing here is contrary to the fact that petitioner Stern chose his own time to do the work. Certainly, he relied on his own judgment and skill in determining how the work should be performed. The parties agree that the laws of New York do not require its employees to take oaths of office. It does not appear that the degree of control exercised by the Board of Housing over the services of the partnership was different from that which ordinarily exists between attorney and client. *E. A. Simpson*, 28 B. T. A. 556.

The argument of counsel for the petitioners is, in effect, that employment of the partnership as it existed in 1926 made each member thereof, at that time and during subsequent years, employees of the Board of Housing. The stipulation does not disclose the membership of the firm in 1926 or 1927. In 1928 it consisted of the petitioners and Lewis A. Pinkussohn and Howard A. Spellman; in 1929 it consisted of the petitioners and Pinkussohn; and in 1930 the partners were such persons and G. Frank Dougherty. Each year there was a change of interests in the partnership. The record fails to disclose whether the Board of Housing was aware of the membership of the firm as it existed in 1926 and subsequent years. Under the circumstances, we can not say that the Board of Housing

actually employed the services of each member of the partnership in the taxable years. Cf. *Victor G. Marquissee*, 11 B. T. A. 334; *Russell* v. *Heiner*, 45 Fed. (2d) 872; affd., 53 Fed. (2d) 1009.

We find no error in the action of the respondent in holding that the compensation in question was received by the petitioners as independent contractors and was not exempt from income tax.

Reviewed by the Board.

> *Decision will be entered in each proceeding under Rule 50.*

MURDOCK concurs in the result.